United States District Court
District of Massachusetts

———————————————————  )
                                     )
RODRICK TAYLOR,                      )
                                     )
          Petitioner,                )
                                     )
          v.                         )     Civil Action No.
                                     )     17-11519-NMG
SUPERINTENDENT SEAN MEDEIROS,        )
                                     )
          Respondent.                )
———————————————————  )

MEMORANDUM & ORDER

GORTON, J.

Before the Court is a petition for a writ of habeas corpus
filed by Rodrick Taylor ("Taylor" or "petitioner") pursuant to
28 U.S.C. § 2254 challenging his July, 2008, conviction for
second degree murder in the Massachusetts Superior Court for
Suffolk County.

I.  **Background**

    A.  **The Murder**

    In July, 2006, Taylor was indicted by a grand jury for
first degree murder.

    The Commonwealth presented credible evidence at trial that
Taylor had strangled the victim, Dominique Samuels ("Samuels" or
"the victim"), and burned her body in a public park days later.
Samuels resided in a multi-bedroom apartment with Martin McCray
("McCray"), McCray's brother, McCray's female cousin and a male

-1-

friend of McCray.  Taylor is McCray's cousin and throughout the
trial Taylor maintained that McCray had actually committed the
murder.  In the alternative, he claimed that the Medical
Examiner implied that there was evidence that no murder had been
committed.

On the night in question, April 27 into the early hours of
April 28, 2006, Taylor and McCray were in McCray's room,
drinking alcohol and playing video games.  Around 10:00 P.M.,
McCray left his apartment to spend the night at his girlfriend's
home.  Taylor remained in McCray's room.

A number of witnesses recalled hearing screaming that night
coming from the victim's apartment.  The landlord's daughter
testified that she heard two men laughing and dragging something
after an altercation.  McCray's cousin heard what she initially
assumed was a sexual encounter but later believed it to be a
woman in distress and then a loud boom.  Despite those noises,
no one residing inside the building notified law enforcement.

The following morning, Taylor went to the apartment of
McCray's girlfriend to see McCray.  McCray claimed that Taylor
confessed to killing Samuels at that time and showed McCray
scratches on his hands and neck inflicted by Samuels.  During
the next few days, McCray and Taylor spoke on the phone several
times.  McCray alleged that Taylor sought access to a vehicle to
dispose of Samuels's body.  McCray also claimed that Taylor told

him that he intended to burn Samuels's fingertips because his skin was underneath her fingernails.  McCray testified that at 5:30 A.M. on Sunday, April 30, 2006, Taylor called him to tell him "it's done".  Samuels's body was discovered in Franklin Park 30 minutes later.

A search of McCray's room thereafter revealed two distinct bloodstains: one containing the DNA of the victim and one containing the DNA of Taylor.

### B.    State Court Proceedings

During the trial, a juror notified the court that some of the other jurors may have been sleeping during some of the testimony.  The judge offered to speak with individual jurors or with the group as a whole.  Defense counsel indicated that addressing the group was sufficient and the judge then instructed the jurors to remain alert throughout the testimony. That issue was not raised again during the trial.

The prosecutor asserted in his closing argument that the alternate theory of the defense that McCray committed the murder was not credible, stating:

> if you don't believe Martin McCray because you think he
> killed Dominique Samuels, I suggest to you, ladies and
> gentlemen, that you will have violated the oath that you
> took as jurors.

He added that:

> to call [the defense's theory] a rumor, to call that
> speculation, to call that innuendo is to give that

statement too much credit . . . [and it] is a bald-face-lie.

The prosecutor also suggested that only Taylor knew where he was when certain incriminating phone calls were placed. Specifically, he stated that:

> [N]ot one witness put the defendant at Martha Laing's house, not one, not any of the witnesses [defense counsel] called.  Marie Anderson doesn't say that.  Martha Laing doesn't say that.  And you know who else doesn't say that?  The defendant doesn't say that.  In his statement to the police on May 3, before any of these cell phone records came to light, what would the defendant say about his whereabouts in the early morning of April 30?  He was asked a direct question: Where were you?  And how did he answer?  I was at home at Richfield Street.  I stayed there all night.  No mention of going to Norwood.

He also stated:

> [Defense counsel] says I can't tell you that that means that he was in Franklin Park.  I'm not saying he was in Franklin Park.  I have no idea where he was when he made those calls.  Nobody does except for the defendant.  But the cell phone records prove something: he wasn't in Norwood.  He was not in Norwood as [defense counsel] claimed he would be.

Also during closing argument, the prosecutor referenced the presence of Taylor's DNA and the corresponding forensic testimony and stated "[i]t doesn't get any better than that".

Defense counsel objected immediately after the prosecutor's "jury's oath" comment and several other times throughout the closing argument.  In response to those objections, and the court's perception that the "jury's oath" comment was "troubling", the judge gave a specific curative instruction to

the jury with respect to that comment both during closing arguments and at the final jury charge.

Taylor was convicted of murder in the second degree in July, 2008, following an eight-week jury trial.  Taylor filed a notice of appeal shortly thereafter and then filed a motion for a new trial in April, 2011.  Those motions were subsequently consolidated and were denied in February, 2012.

In petitioner's consolidated appeal, he argued to the Massachusetts Appeals Court ("the MAC") that 1) his right to a speedy trial was violated, 2) the prosecutor's closing argument was improper and 3) the jury instructions were inadequate because they failed to instruct on the relevance of intoxication.

The Supreme Judicial Court of Massachusetts ("the SJC") affirmed Taylor's conviction in 2014.  Petitioner filed a second motion for a new trial in September, 2015, asserting for the first time that the trial court erred in failing to conduct voir dire of the sleeping jurors and that his initial appellate counsel was ineffective for failing to raise that issue on his first appeal.  The MAC found that the jury misconduct claim had been waived but nevertheless reviewed the trial judge's ruling, found that there was no error and affirmed the denial of Taylor's motion for a new trial.  The SJC denied further review.

### C.   Federal Court Proceedings

Taylor filed this petition for habeas corpus in August, 2017, pursuant to 28 U.S.C. § 2254.  He claims that 1) he was denied effective assistance of counsel when his trial attorney failed to address adequately the issue of sleeping jurors and when his appellate counsel failed to raise that issue on appeal and 2) the prosecutor's closing argument contained improper and prejudicial comments attacking defense counsel and the defense's theory of the case, commenting on petitioner's failure to testify and expressing his personal opinion as to the strength of the evidence.

## II.  **Habeas Petition Under § 2254**

### A.   Legal Standard

A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991).  State court factual findings are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).  The resolution of state law issues by state courts is binding. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), a habeas petitioner

> can prevail only if the state court's decision [on the merits of a claim] "was contrary to, or involved an unreasonable application of, clearly established

-6-

> Federal law, as determined by the Supreme Court of the
> United States."

Tyler v. Cain, 533 U.S. 656, 660 (2001) (quoting 28 U.S.C.
§ 2254(d)(1)).  A state court decision is "contrary to" clearly
established Supreme Court precedent if "the state court applies
a rule that contradicts the governing law set forth" in Supreme
Court cases or if the facts before the state court are
"materially indistinguishable" from a Supreme Court decision but
"nevertheless arrives at a [different] result." Williams v.
Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision
represents an "unreasonable application" of Supreme Court
precedent if

> the state court identifies the correct governing legal
> rule . . . but unreasonably applies it to the facts of
> the particular state prisoner's case."

Id. at 407-08.

### B.   Ineffective Assistance of Counsel Claims

Petitioner asserts that trial counsel was ineffective
because he failed to address adequately the issue of sleeping
jurors and that appellate counsel was ineffective for failing to
raise that issue on his initial appeal.  Because that issue was
not raised initially on appeal, the MAC determined that the
claim had been waived in deciding petitioner's second motion for
a new trial. See Commonwealth v. Taylor, 16-P-731, 2017 WL
1476265, at *1 (Mass. App. Ct. Apr. 25, 2017).  Claims that have

been deemed waived on direct review cannot be raised in a
subsequent habeas petition. <u>Logan</u> v. <u>Gelb</u>, 790 F.3d 65, 72-73
(1st Cir. 2015) (citing <u>Gunter</u> v. <u>Maloney</u>, 291 F.3d 74, 79 (1st
Cir. 2002)).  Accordingly, petitioner's claim of ineffective
assistance of counsel with respect to his trial attorney cannot
be considered on collateral review unless he can establish
"cause and prejudice" with respect to the procedural default or
a "fundamental miscarriage of justice". <u>Id.</u>

Defense counsel raised concerns about sleeping jurors at
trial and suggested a remedy. <u>Taylor</u>, 2017 WL 1476265, at *2.
The MAC on review found that the trial judge's determination
that <u>voir dire</u> was unnecessary was proper and without error. <u>Id.</u>
at *2-3.  Given that counsel specifically raised the issue of
sleeping jurors with the trial judge and the state appellate
court found that he did not err by failing to conduct individual
<u>voir dire</u>, Taylor cannot demonstrate that his trial counsel's
performance prejudiced him in any way.  Nor does this Court find
that the allegedly deficient performance of trial counsel
constituted a fundamental miscarriage of justice.  Petitioner's
claim for ineffective assistance of trial counsel therefore
cannot overcome the procedural default.

Because ineffective assistance of appellate counsel was not
an issue that could have been raised on the initial direct
appeal, the Court finds that claim is not procedurally

-8-

defaulted.  Nevertheless, to prevail on that claim petitioner must demonstrate that 1) his counsel's performance was deficient and 2) he was prejudiced as a result of that deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). Taylor asserts that his appellate counsel was deficient because he failed to raise a claim for ineffective assistance of trial counsel on direct appeal.

Appellate counsel's failure to raise the claim of ineffective assistance of trial counsel was not constitutionally deficient because "[a]ppellate counsel is not required to raise every non-frivolous claim" on appeal. Lattimore v. Dubois, 311 F.3d 46, 57 (1st Cir. 2002) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).  The role of appellate counsel is to bring the claims he or she believes are most likely to succeed and petitioner's counsel raised a number of other non-frivolous claims. Jones v. Barnes, 463 U.S. 745, 753 (1983) (holding that appellate counsel need not raise "every colorable claim" that could be brought on appeal (internal quotation marks omitted)).

Even assuming that Taylor could demonstrate deficient performance on the part of appellate counsel, he cannot show prejudice.  To establish prejudice, the petitioner must show "that the decision reached would reasonably likely have been different absent the errors". Strickland, 466 U.S. at 696.  The likelihood of a different outcome must be substantial and not

simply conceivable. <u>Harrington</u> v. <u>Richter</u>, 562 U.S. 86, 112 (2011) (citing <u>Strickland</u>, 466 U.S. at 693).

It is unnecessary for the Court to hypothesize different outcomes here because the MAC has already determined that there was no prejudicial error as to the handling of the sleeping juror issue at trial.  Without such error, Taylor cannot establish that but for his appellate counsel's failure to raise an ineffective assistance of counsel claim, the outcome would have likely been different.  He also has not shown that the state court decision on the sleeping juror issue was contrary to or an unreasonable application of federal law but rather it involved an application of state law. <u>See</u> <u>Pulley</u> v. <u>Harris</u>, 465 U.S. 37, 41 (1984) (holding that in the context of a habeas petition pursuant to 28 U.S.C. § 2241, "[a] federal court may not issue the writ on the basis of a perceived error of state law.").

Accordingly, the petitioner's habeas petition on the basis of ineffective assistance of counsel will be denied.

### C.   Improper Prosecutorial Statements

Petitioner also seeks habeas relief based on his claim that the prosecutor's statements during closing argument were improper and prejudicial.  Petitioner also submits that several comments violated his Fifth and Fourteenth Amendment right not

to testify.  Finally, he contends that the SJC's contrary conclusions were unreasonable under current Supreme Court law.

The Court in United States v. Young, 470 U.S. 1 (1985), held that "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone". Id. at 11.  Instead, the remarks must be examined within the context of the trial to determine whether they amounted to prejudicial error that deprived the petitioner of a fair trial. Id.

In order to succeed on this claim, the petitioner must demonstrate that the prosecutor's comments went beyond being merely "undesirable or even universally condemned" but rather "so infected the trial with unfairness as to make the resulting conviction a denial of due process". Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  The Court must consider 1) "the nature and seriousness of the comments", 2) "whether the comments were invited by defense arguments", 3) "whether the jury was adequately instructed" and 4) "the weight of the evidence". Hardy v. Maloney, 909 F.3d 494, 501 (1st Cir. 2018) (citing Darden, 477 U.S. at 181-82); United States v. Rodriguez-Velez, 597 F.3d 32, 45 (1st Cir. 2010) (applying a similar four-factor harmless error test for inappropriate prosecutorial comments about a defendant's failure to testify).

### 1.   Prosecutor's Comments on the Defense's Theory and the Jury's Oath

The prosecutor must

> refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel.

United States v. Bennett, 75 F.3d 40, 46 (1st Cir. 1996).  A prosecutor is, however, permitted to attack the plausibility of the defense's theory. See Darden, 477 U.S. at 182 (noting that most of the objectionable comments by the prosecutor were made in response to the defense); United States v. Henderson, 320 F.3d 92, 106 (1st Cir. 2003).  Even when determined to be inappropriate, a prosecutor's improper attacks on the defense's theory can be remedied through a curative instruction. Darden, 477 U.S. at 182; Donnelly, 416 U.S. at 644-45 (finding that improper prosecutorial statements in closing arguments are sufficiently remedied by a subsequent curative instruction).

While the prosecutor's comments as to the strength of the defense's theory and violation of the jury's oath were inappropriate, the SJC determined that the prosecutor's isolated remarks were not prejudicial error. Commonwealth v. Taylor, 14 N.E.3d 955, 966 (Mass. 2014).  The SJC was correct for several reasons.  First, a court should not infer that the jury will draw the most damaging meaning from an isolated remark after sitting through a lengthy trial and jury instructions. See

Donnelly, 416 U.S. at 645-47 (holding that a single remark in the course of an extended trial is insufficient to render the trial fundamentally unfair in violation of due process).

Second, much of the objectionable content was made in response to the opening argument of the defense.  The defense asserted an alternate theory of the case, namely that McCray committed the murder, and thus the prosecutor was entitled to respond. Hardy, 909 F.3d at 503 (finding that the SJC was not unreasonable in application of federal law regarding derogatory prosecutorial comments about third-party culprit defense). While some of the prosecutor's comments were misplaced and unfit, they were not so prejudicial as to render the state courts' decisions unreasonable or contrary to federal law.

Third, the trial judge specifically instructed the jury to disregard the prosecutor's "jury's oath" remark at the time of the defense's objection and again during the final jury charge. Any improper comments made by the prosecutor during his closing argument attacking the defense's theory are presumed to have been remedied by the trial court's instructions.

Finally, the weight of the evidence against the petitioner was strong. Id. at 501.  The SJC found that there was a

> substantial case against the defendant, including
> forensic evidence corroborating his presence at the
> site of the victim's death, and testimony that he had
> confessed to strangling the victim.

<u>Taylor</u>, 14 N.E.3d at 966.  The SJC found this evidence to be extensive and strong which significantly decreased the prejudicial effect of any improper comment made by the prosecutor. <u>Id.</u> at 966-67.  The state court's determinations of fact are entitled to substantial deference. <u>See</u> 28 U.S.C. § 2254(e)(1).  The Court therefore concludes that the prosecutor's comments as to the defense's theory and the jury's oath were not so prejudicial as to infect the trial with fundamental unfairness and thus Taylor's habeas petition on the basis of those comments will be denied.

### 2.   Prosecutor's Comments on Petitioner's Failure to Testify

Petitioner also contends that the prosecutor impermissibly commented on the exercise of his right not to testify at his criminal trial.  The alleged comments on petitioner's failure to testify were the prosecutor's statements that 1) the petitioner did not initially claim to be located where he later testified to have been during the disposal of the victim's body and 2) only the petitioner, who did not testify, knew where he was when critical phone calls were made while the victim's body was being burned in Franklin Park.

With respect to the first comment, petitioner fails to include the entirety of the prosecutor's remark which, when read in context, is clearly a reference to a prior inconsistent

statement he made to the police and not a reference to his failure to testify.  A prosecutor obviously may impeach a defendant with a prior inconsistent statement. <u>See</u> <u>Harris</u> v. <u>New York</u>, 401 U.S. 222, 224-26 (1971) (holding that even inadmissible statements obtained from the defendant in violation of his <u>Miranda</u> rights could still be used to impeach the defendant's testimony at trial).

With respect to the second comment, a prosecutor may not comment on the defendant's failure to testify in his own defense or use language that would naturally and necessarily be taken by the jury to be a comment on the failure of the accused to testify. <u>United States</u> v. <u>Taylor</u>, 848 F.3d 476, 488 (1st Cir. 2017); <u>see also</u> <u>Griffin</u> v. <u>California</u>, 380 U.S. 609, 615 (1965). Where the defense has presented an alternate theory, the prosecutor may comment on the plausibility of that theory so long as the comments are focused on the lack of record evidence and not the defendant's failure to produce evidence. <u>Id.</u> at 489; <u>United States</u> v. <u>Lyons</u>, 740 F.3d 702, 730 (1st Cir. 2014), <u>cert. denied</u>, 134 S. Ct. 2743 (2014) (finding no Fifth Amendment violation where a prosecutor commented on a lack of evidence to support the defense's theory).  If the prosecutor improperly comments on the defendant's failure to testify, the court must determine whether those comments were prejudicial or harmless error. <u>Rodriguez-Velez</u>, 597 F.3d at 45.

-15-

When read in the context of the entire statement, the prosecutor was referring to evidence which indicated that Taylor's cell phone was not located where he claimed he was when the victim's body was being disposed of.  A prosecutor is entitled to use the evidence to undermine the defense's theory. While tangentially referring to the failure of the defendant to testify, the purpose of the prosecutor's comment was to respond to the theory that Taylor did not commit the murder by showing that his story was not credible.  Even assuming that the prosecutor's comment was potentially inappropriate, that alleged misconduct was not severe.

Moreover, the trial judge properly instructed the jury on the defendant's right not to testify and the instruction given was extensive.  That curative instruction was sufficient to remedy any prejudice that might have arisen from the challenged comment. Id.  Finally, as previously discussed, the evidence of guilt was ample and thus this isolated comment by the prosecutor was harmless.  Taylor has not shown a violation of clearly established federal law with respect to the alleged comments on his failure to testify and therefore his habeas petition will be denied in that respect.

### 3.    Prosecutor's Assertion of Personal Opinion

Finally, petitioner claims that the prosecutor improperly offered his personal opinion when he exclaimed "[i]t doesn't get

-16-

any better than that" in reference to the forensic analyst's testimony that indicated Taylor's DNA was found in a pool of blood next to the victim's blood.

The prosecutor "must refrain from interjecting personal beliefs into the presentation of his case". Young, 470 U.S. at 8-9.  Even where an improper statement of personal opinion is made, the petitioner must still demonstrate that the comment was prejudicial. Hardy, 909 F.3d at 501 (citing Darden, 477 U.S. at 181-82).

The single comment by the prosecutor about the strength of the evidence was not so severe as to be prejudicial.  It was an isolated incident during a lengthy trial. See Donnelly, 416 U.S. 645-47.  Moreover, the trial court instructed the jury that it was the arbiter of fact and that it should disregard the attorneys' opinions as to the weight of the evidence.  Finally, the overwhelming strength of the evidence of guilt negates any prejudice from that comment.  Accordingly, petitioner cannot demonstrate that the state court's decision with respect to the prosecutor's expression of personal opinion contravened clearly established federal law and thus his habeas petition with respect to that claim will be denied.

**ORDER**

For the foregoing reasons, Taylor's petition for writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1) is **DENIED**.


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 17, 2019